UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of PLANNING AND DEVELOPMENT OF EDUCATION, INC., Applicant. | Case No. 21-mc-80242-JCS<br><br>**ORDER GRANTING IN PART EX PARTE MOTION** |

## I. INTRODUCTION

On October 14, 2021, Planning and development of education, Inc., d/b/a Kaichi-juku Naka Sakuragaoka School ("the School"), filed an *ex parte* application for an order pursuant to 28 U.S.C. § 1782 permitting discovery for use in a foreign proceeding. Dkt. No. 1. The School is a cram school located in Gifu, Japan. Decl. of Shigeaki Iwata (dkt. 2) ¶¶ 3–4. It seeks limited discovery from Google, LLC, to ascertain the identities of two anonymous individuals who posted reviews on the School's Google Maps profile regarding the arrest history of one of the School administrators, which the School contends constitute reputational torts under Japanese law. Application (dkt. 1), at 3.

## II. BACKGROUND

Kaichi-juku Naka Sakuragaoka School is located at 6-9-4 Kuranomae, Gifu-shi, Gifu-ken 500-8233, Japan, and operates as a cram school. Iwata Decl. ¶¶ 3–4.

The School "maintains a business profile and appears on Google Maps[.]" *Id.* ¶ 9. Prospective patients often search for the School using Google, which displays a Google Maps business profile for the School. *Id.* ¶ 8. Aside from location and contact information, Google Maps business profiles display public ratings and reviews written by users with Google accounts that are visible to users searching for the business. *Id.* ¶ 10. While a reviewer must have a Google

account to post a review, they may post under a pseudonym. *Id.* ¶ 11. Reviewer accounts are operated by Google, LLC, a Delaware company headquartered in Mountain View, California. Decl. of Kazuyuki Yasuho (dkt. 3), ¶ 5.

On August 20, 2021, two Google accounts, under the pseudonyms いずみけん ("Izumiken") and 亜瀬 ("Ase"),[1] each posted a single one-star rating and negative review on the School's Google Maps profile. Iwata Decl. ¶ 11. Izumiken's review states as follows:

> "Is it true that the head of the school here was arrested?
> What's more, he was arrested while failing to steal underwear, and
> my school friends are being bullied because of that ^^
> Even if you go this cram school, because a crazy person is teaching,
> the kids are also going to become crazy ^^

Decl. of Yoshie Katsurada (dkt. 4), Ex. A & B. Ase's review states:

> Why are you still operating the cram school even though the head of
> your school is currently under arrest? It's too funny ^^

Decl. of Yoshie Katsurada in Support of Applicant's Response to Order to Show Cause (dkt. 11) ("Katsurada Response Decl."), Ex. C.[2]

On October 14, 2021, the School applied *ex parte* for an order pursuant to 28 U.S.C. § 1782 for authorization to conduct limited discovery by serving a subpoena on Google, LLC for "personal identifying information that can be used to identify the true identities of the Anonymous Individuals." App. at 3. The School intends to bring civil lawsuits for reputational torts under Articles 709 and 710 of the Japanese Civil Code against the individual(s) behind these reviews. *Id.*

The School alleged that these reviews "defamed or will defame the reputation of the School, and had or will have a significant negative effect on the School's business operations[.]" Iwata Decl. ¶ 13. The School contends that the reviews "have caused or will cause existing students to leave the School or prospective students to decide to not attend the School." *Id.* The

---

[1] The user Ase has since changed his username to "はむたろう" ("Hamutarō"). His review is no longer visible on the Google Maps business profile. *Id.* ¶ 18.
[2] These reviews are written in Japanese; the translated reviews here were provided to the Court by the School. *See* Katsurada Decl. Ex. A & B, Katsurada Response Decl. Ex. C. The School provided a revised declaration updating the translation of Ase's review to reflect that it was written in present tense. *See* Katsurada Response Decl. Ex. C.

School has thus far been unable to discover the identities of the reviewers. *Id.* ¶ 14. In his declaration, Iwata states that they "suspect" that these reviews were posted by a competitor in order to deter prospective students from attending the School or lure existing students away from the school. *Id.*

On December 15, 2021, the Court entered an Order to Show Cause for why the Application should not be denied on the basis that the anonymous reviews may be true and implicate matters of public concern, and thereby be protected by the First Amendment. Dkt. 8. The School responded on January 5, 2022, dkt. 9, and clarified that Iwata had been arrested in 2016 for "attempted theft," but not for underwear theft. Decl. of Shigeaki Iwata in Support of Applicant's Response to Order to Show Cause (dkt. 10) ("Iwata Response Decl.") ¶ 8. Rather, they had been arrested after a misunderstanding with a neighbor, who called the police on Iwata after they had inadvertently touched clothes hanging on the neighbor's clothesline. *Id.* ¶ 10. Iwata was not prosecuted for this incident. *Id.* As such, the School alleged that Izumiken's review contains false statements, as Iwata had not been arrested for stealing underwear, which is a "despicable perverted act that [Iwata] never committed" and is "especially malicious given that [Iwata] is involved in children[s'] education." *Id.* ¶ 12. As for Ase's review, the School contends that it contained false information because Iwata was not under arrest at the time the review was posted, and that "[i]f someone without knowledge of [Iwata's] arrest reads the review published by Ase, they would think that [Iwata] was under arrest in 2021, which is inaccurate." *Id.* ¶ 14.

## III. DISCUSSION

### A. Legal Standard

Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782(a). Section 1782 permits district courts to authorize discovery where the following requirements are met: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for

3

use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted).

A litigant in a foreign action qualifies as an "interested person" under Section 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Further, Section 1782 does not require that a formal proceeding in the foreign jurisdiction is currently pending, or even imminent; rather, a court may permit discovery under Section 1782 so long as a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *In re Hoteles City Express,* No. 18-mc-80112-JSC, 2018 WL 3417551, at *2 (N.D. Cal. July 13, 2018) (quoting *Intel*, 542 U.S. at 256).

Even if the basic requirements of Section 1782 are satisfied, however, a district court has wide discretion in deciding whether to permit discovery under Section 1782. *Intel*, 542 U.S. at 260–61. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65.

"A district court's discretion is to be exercised in view of the twin aims of § 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *In re Nat'l Ct. Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790, at *2 (N.D. Cal. Mar. 11, 2015) (citing *Schmitz v. Bernstein Libehard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004)). The party seeking discovery need not establish that the information sought would be discoverable under the foreign court's law or that the U.S. would permit the discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261–63.

### B. The Statutory Requirements Are Met

The School's request meets the minimum statutory requirements under Section 1782. The School has established that it is an "interested person" seeking "documents or things" for use in a foreign proceeding. *See* Iwata Decl. ¶ 16 ("I intend to and will file civil lawsuits against all of the Anonymous Individuals for damaging the reputation of the School."). Google is headquartered in Mountain View, California, in this district. The Court therefore has authority to issue this subpoena.

### C. The First Discretionary Factor

Courts next consider the four discretionary *Intel* factors in deciding whether to grant the application. The first discretionary factor considers whether applications are seeking discovery against participants in the foreign proceeding. *Intel*, 542 U.S. at 247. "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264; *see also In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) ("[T]he key issue is whether the material is obtainable through the foreign proceeding." (citation omitted)). As such, the first discretionary factor favors discovery against nonparticipants in foreign proceedings. *Cf. In re Varian Med. Sys.*, 2016 WL 1161568, at *4 (finding that the first *Intel* factor weighs heavily against seeking discovery from participants in foreign tribunals). The School has asserted that "Google is not, and will not be, a party or participant to the anticipated Japanese civil lawsuits," and that the documents are held in the United States and are outside of the reach of Japanese courts' jurisdiction. Yasuho Decl. ¶ 23. Therefore, this factor weighs in favor of the application.

### D. The Second Discretionary Factor

The second discretionary factor "focuses on whether the foreign tribunal is willing to consider the information sought." *In re Varian Med. Sys.*, 2016 WL 1161568, at *4. Where there is no evidence suggesting that foreign courts would be unreceptive to the requested discovery, the second discretionary factor weighs in favor of the application. *See In re Med. Corp. H&S*, No. 19-mc-80107-SVK, 2019 WL 2299953, at *3 (N.D. Cal. May 30, 2019) (holding that the second

factor weighs in favor of an application when there is an absence of evidence that a foreign tribunal is unreceptive to this type of discovery, or the information sought). The School has represented that there is no reason or evidence that Japanese courts would object to this type of discovery. *See* App. at 8. There is no evidence in the record to the contrary. The second factor therefore weighs in favor of the application.

### E. The Third Discretionary Factor

The third factor considers whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Where there is a "perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782" this factor may weigh against an application. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013). Absence of evidence of attempted circumvention weighs in favor of an application. *See, e.g.*, *In re Google, Inc.*, No. 14-mc-80333-DMR, 2014 WL 7146994, at *2 (N.D. Cal. Dec. 15, 2014); *In re Eurasian Nat. Res. Corp. Ltd.*, No. 18-mc-80041-LB, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018); *In re Honda*, No. 21-mc-80167-VKD, 2021 WL 3173210, at *4 (N.D. Cal. July 27, 2021).

Here, the School has asserted that the purpose of this application is to identify account holders behind the Google Maps reviews because Japanese courts do not allow civil lawsuits against unknown defendants. Iwata Decl. ¶ 15. There is no evidence to the contrary. Therefore, the Court finds that the third discretionary factor weighs in favor of the Application at this stage.[3]

---

[3] In addition, while the fourth discretionary factor typically assesses the burdens an application places on the First Amendment rights of an anonymous individual, *see* III.F, *supra*, the third discretionary factor may also weigh against granting an application that conceals an attempt to contravene the First Amendment's purpose without justification. Even where the speakers appear to be "foreign citizens outside U.S. territory" who "do not possess rights under the U.S. Constitution," *see Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020), the principles underlying the First Amendment may counsel a court of the United States against exercising its discretion to aid in punishing speech that would be protected in this country.

The School's response to the Court's Order to Show Cause satisfies the Court's concerns that the application could circumvent the First Amendment's protection of truthful statements, especially those regarding matters of public concern. *See Thornhill v. State of Alabama*, 310 U.S. 88, 101–02 (1940) ("The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without

### F. The Fourth Discretionary Factor

The fourth factor considers whether the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265.[4] Requests are unduly burdensome when they are "not narrowly tailored, request confidential information and appear to be a "broad fishing expedition for irrelevant information." *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). The "proper scope" of requests under section 1782 is "generally determined by the Federal Rules of Civil Procedure." *In re Varian Med. Sys.*, 2016 WL 1161568, at *5. Parties "may obtain discovery that is relevant to any parties claim or defense," Fed. R. Civ. P. 26(b)(1), but "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 246.

The School's proposed subpoena requests all documents showing names, addresses, "recovery, authentication, or ALL other" telephone numbers and email addresses, names and addresses for all payment methods registered to the accounts, as well as access logs and login history "for the three-month period immediately preceding October 14, 2021 and until the date that you respond to this request[.]" App. Ex. B at 1–3. The School requests this same information

---

previous restraint or fear of subsequent punishment."); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) (discussing the balance between the First Amendment and "the important social values which underlie the law of defamation" (cleaned up)). The School has asserted that the reviews are intentionally false and injurious statements, and likely would not be protected by the First Amendment even in the United States. *See* Iwata Response Decl. ¶¶ 10–14. Accordingly, without prejudice to any argument that might be raised on a motion to quash, the Court does not find that policies related to the First Amendment warrant denying this application *sua sponte*.

[4] In requests for the identity of anonymous speakers, the fourth discretionary factor also considers the First Amendment and the potential chilling effect that granting the request would have on anonymous speech. *See Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102-DMR, 2021 WL 4124216, at *3 (N.D. Cal. Sept. 9, 2021). As a substantial number of applications have been filed within the last year seeking personally identifiable information from Google for the purpose of identifying of negative reviewers, the Court is concerned that the influx of these requests will create a chilling effect on the speech of anonymous reviewers or embolden entities which seek only to harass or intimidate the speakers. *See In re Komanokai*, No. 4:20-mc-80149-KAW, 2020 WL 6684565, at *3 (N.D. Cal. Nov. 12, 2020) (denying application for discovery seeking the identities of negative reviewers on the basis that it was likely a "fishing expedition" and that the Applicant was "far more likely to use the subscriber information to intimidate and harass the user into taking down the one-star review, rather than filing a lawsuit"). However, as Google and the individual users at issue are best placed to assess the burden and chilling effect that this request may have on their and other Google users' speech, and the School has asserted that the statements are false and defamatory such that they would not be protected by the First Amendment even if made in the United States, the Court declines to resolve this issue *sua sponte*, without prejudice to addressing it on a motion to quash.

7

for any other accounts affiliated with the reviewers' Google accounts, such as Google Ads accounts. *Id.* at 2.  The proposed subpoena appropriately does not seek the content of any communications associated with the accounts at issue, nor does it request the users' credit card numbers, expiration dates, or validation codes. *Id.*

As this subpoena requests personally identifying information from anonymous speakers, it intrudes upon the privacy interests of the Google account holders.  The School's request for all potentially identifying information is overly broad; it is appropriate to authorize the School to seek information *sufficient* to identify the reviewers, but not to provide an all-encompassing trove of the account-holders' private information.  In particular, the six requests for access logs and login history from the accounts, spanning three months before the Application to the date of Google's response to the subpoena, is not adequately justified. *See In re Hayashi Surgical Clinic*, No. 19-MC-80071-VKD, 2019 WL 1560461, at *4 (N.D. Cal. Apr. 10, 2019) (finding that without justification, access logs were unnecessary to identify the users behind Google reviews).  The School makes a sufficient case for the utility of acquiring IP addresses associated with the Google accounts, especially if the personally identifiable information entered into the Google Account is falsified. *See* Yasuho Decl. ¶ 29.  However, the requested access logs encompass more than IP addresses, including information such as method and time of login. *Id.*  Although the School supports its need for IP addresses, it provides no justification for the other information in the access logs. *See id.*

The School may serve the subpoena on Google, subject to the following modifications: (1) the School may request only documents *sufficient to identify* all names and contact information for the Google users at issue, rather than *all* documents containing duplicative instances of that information; (2) the removal of the six requests for access log and login history for the three Google accounts and any associated accounts, which may be replaced with a request for documents sufficient to identify all IP addresses used to access the accounts at issue.

## IV. CONCLUSION

As this application meets the statutory criteria for an order authorizing service of the proposed subpoena and the discretionary factors favor authorization of service, the Court

authorizes service of the proposed subpoena on Google, subject to the above modifications.

This order is without prejudice to any argument that might be raised in a motion to quash or modify the subpoena by Google following service or by the Google account user(s) whose identifying information is sought, and the Court orders the School to comply with the following requirements to ensure all interested persons have an opportunity to contest the subpoena if they wish:

1. At the time of service of the subpoena, the School must also serve a copy of this order on Google.

2. No later than 10 days after service of the subpoena and this order, Google shall notify each of the account users that their identifying information is sought by the School and shall serve a copy of this order on each such account user.

3. Google and/or each account user whose identifying information is sought may, no later than 21 days after Google provides notice to its users, file a motion in this Court contesting the subpoena (including a motion to quash or modify the subpoena).

4. If any party contests the subpoena, Google shall preserve, but not disclose, the information sought by the subpoena pending resolution of that contest.

5. Any information the School obtains pursuant to the subpoena may be used only for purposes of the anticipated action in Japan, and the School may not release such information or use it for any other purpose, absent a Court order authorizing such release or use.

**IT IS SO ORDERED.**

Dated: January 26, 2022

JOSEPH C. SPERO
Chief Magistrate Judge